UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

KENNETH EDWARD BOLTON, III,

                Petitioner,

v.

CARMEN PALMER,

                Respondent.

_____/

Case No. 1:17-cv-666

Honorable Janet T. Neff

## REPORT AND RECOMMENDATION

       This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254.

Petitioner Kenneth Edward Bolton, III, is incarcerated with the Michigan Department of

Corrections at the Michigan Reformatory (RMI) in Ionia, Michigan.  Following a jury trial in the

Kent County Circuit Court, Petitioner was convicted of one count of first-degree criminal sexual

conduct, Mich. Comp. Laws § 750.520b.  On March 13, 2014, the court sentenced Petitioner as a

habitual offender-second offense, Mich. Comp. Laws § 769.10, to a prison term of 28 to 90 years,

to be served consecutively to a sentence of 3 years, 6 months to 20 years.  The latter sentence was

for an armed robbery offense to which Petitioner entered a plea of guilty in the Kent County Circuit

Court during 2005.  Petitioner was on parole for the armed robbery offense when he committed

the first-degree criminal sexual conduct offense.

       On July 21, 2017, Petitioner filed his habeas corpus petition which raises two

grounds for relief, as follows:

      I.      Did defense counsel mislead defendant into believing that if he lost at trial,
             his guidelines maximum minimum would be 225 months.  At sentencing,
             however, his maxim[u]m minimum was scored at 356 months.  A 336
             month [minimum] was imposed.  Said advice caused the defendant to reject

a favorable plea offer and denied defendant his Sixth Amendment right to effective assistance of counsel?

II.     The prosecution misled defendant into believing that, if he lost at trial, his guidelines maximum minimum would be 225 months.  Due to guidelines objections made by the prosecution at sentencing, the maxim[u]m minimum term was in fact 356 months.  A 336 month term was imposed.  Defendant presents two issues: (1) the change in the prosecution's position, regarding the guidelines, should be presumed to be vindictive and thus a violation of due process of law; and (2) even if not vindictive, the prosecution should not be allowed to mislead the accused during plea negotiations.  Both forms of error violate due process.

(Pet., ECF No. 1, PageID.7, 9.)  Respondent has filed an answer to the petition (ECF No. 14) stating that the grounds should be denied because they are without merit or procedurally defaulted. Upon review and applying the standards of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA), I find that the grounds are utterly without merit. Accordingly, I recommend that the petition be denied.

## **Discussion**

I.     <u>Factual allegations</u>

On Sunday night, September 29, 2013, Petitioner and Brenda Sue Hammons had sexual intercourse in a courtyard near the St. James school in Grand Rapids, Michigan.  According to Ms. Hammons, Petitioner had beaten her, dragged her to that location, and then, without her consent, penetrated her mouth and vagina with his penis.  (Trial Tr. II, ECF No. 15-4, PageID.390-437.)  According to Petitioner, he had paid Ms. Hammons $15.00 for consensual oral and vaginal sex.  (*Id*., PageID.474-520.)  Petitioner testified that Ms. Hammons had pulled down her pants, leaned forward against a wall, and assisted Petitioner in penetrating her vaginally.  (*Id*.)

Petitioner's story did not match up with the testimony of other witnesses.  Two nearby neighbors testified that they heard blood-curdling screams.  (*Id*., PageID.329-339.)  One of the neighbors called a seminarian living at the St. James rectory.  (*Id*.)  The seminarian investigated

and came upon Petitioner on top of Ms. Hammons on the ground, thrusting into her.  (*Id.*, PageID.340-358.)  The seminarian called the police.  (*Id.*)  The first officer on the scene also saw Petitioner thrusting into Ms. Hammons as he laid on top of her on the ground.  (*Id.*, PageID.361.)

When the police arrived, Petitioner attempted to flee, but he was caught and detained.  (*Id.*, PageID.362-364.)  He told the officer several different stories regarding the events that led up to his sexual encounter with Ms. Hammons before settling on the prostitution story that he presented at trial.  (*Id.*, PageID.364-368, 375.)

The trial judge was shocked by the brutality of Petitioner's rape of Ms. Hammons. At Petitioner's sentencing hearing, the judge stated he had some issues with the sentencing guidelines.  (Sentencing Tr., ECF No. 15-6, PageID.598-599.)  He raised them with counsel in chambers.  (*Id.*)  When they went on the record, the court raised issues with the scoring of Offense Variable 7.  (*Id.*, PageID.599-601.)  That variable addresses aggravated physical abuse.  The judge indicated: "[that variable] scores 50 points as a victim was treated with sadism, torture or excessive brutality, or conduct designed to significantly increase the fear and anxiety of a victim suffered during the offense."  (Sentencing Tr., ECF No. 15-6, PageID.598-599.)  The presentence report scored the variable at 0.  The judge, after raising the issue, invited comment from defense counsel and then the prosecutor.  Not surprisingly, defense counsel opposed scoring the variable at 50 and the prosecutor supported it.  The court scored the variable at 50 points noting that this case presented "one of the most brutal rapes" he had ever seen.  (*Id.*, PageID.600.)

Next, the judge raised the issue of OV 10 regarding the exploitation of vulnerable victims.  The presentence report also scored this variable at 0.  The court invited comment from defense counsel and the prosecutor and then scored the variable at 5 points because of the difference in size and age between Petitioner and his victim.  (*Id.*, PageID.602.)  The court also

invited comment on OV 12.  The court changed that variable from 5 to 0.  Thus, the net result of

the court's rescoring of the variable increased Petitioner's total OV points from 65 to 115.  That

changed his guidelines minimum range from 126 to 262 months to 171 to 356 months.  (Sentencing

Information Report, ECF No. 15-7, PageID.613.)  The court then sentenced Petitioner as described

above.

Petitioner takes issue with the sentence that was imposed because, to him, it seems

inconsistent with a discussion regarding sentencing that took place before the trial began.  When

the parties gathered in the courtroom on the first day of trial, before the jury venire was brought

in, Petitioner moved to replace his attorney.  The court denied the motion and then asked if there

was a plea offer on the table.  The following exchange ensued:

> THE COURT: Sir, I'm not going to discuss this with you.  I want to tell you what your options are on the record at this point in time.
>
> Ms. Brinkman, is there an offer here?
>
> MS. BRINKMAN: Yes, Your Honor.  That upon successful plea and sentence to Count 1, Criminal Sexual Conduct in the First Degree, we'll dismiss Count 2, and the Supplemental Information charging him as a second felony offender.
>
> THE COURT: All right. And what do we estimate the guidelines at.
>
> MS. BRINKMAN: Your Honor, with one count it would be 108--?
>
> THE COURT: to 180?
>
> MS. BRINKMAN: Yes, I believe so.
>
> THE COURT: And then with the supplement, 180 to 225?
>
> MS. BRINKMAN: That is correct.
>
> THE COURT: Mr. Milanowski, is that your estimate on the sentencing guidelines also?
>
> MR. MILANOWSKI: I believe that's correct, yes, Your Honor.
>
> THE COURT: And, Ms. Brinkman, it's my understanding that you would make a sentencing recommendation that I stay within those guidelines, correct?

MS. BRINKMAN: Yes, Your Honor.

THE COURT: Sir, what they're saying to you this morning is you have--really have two options here.  We either go to trial or you enter a plea.  If you enter a plea pursuant to the plea bargain, then what they're--what you're doing is entering a plea to criminal sexual conduct in the first degree.  That carries a maximum penalty of life or any term of years.  They would dismiss the supplement.  And they would make sentencing recommendation that you be sentenced within the guidelines which are somewhere between 108 to 180.  That's a sentence of 9 years to 15 years.

If you go to trial and lose, your guidelines go from 108 to 225, which is a maximum of 18 years and 3 months.

Now it doesn't make any difference to me whether you go to trial this morning or whether you enter a plea, we're prepared to do both.  And I never want someone coming in and entering a plea to something they didn't do just to take advantage of a plea bargain.  If you're not guilty, that's why we have trials.

Now you've got really three options.  You can enter a plea. You can talk to your attorney for about five more minutes, if you want.  I'll put you back in the box.  Or we can get the jury up here and go to trial.  Which would you like to do?

THE DEFENDANT: I want a trial.

THE COURT: All right. We'll do that.

(Trial Tr. I, ECF No. 15-3, PageID.168-170.)[1]

That exchange forms the foundation of the issues Petitioner raises in this Court and for two of the three issues he raised, with the assistance of counsel, on his direct appeal.[2]  (Pet'r's Appeal Br., ECF No. 15-8, PageID.633.)  By unpublished *per curiam* opinion dated July 28, 2015, the Michigan Court of Appeals affirmed the trial court.  Petitioner then filed a *pro per* application for leave to appeal in the Michigan Supreme Court raising the same three issues he had raised in the court of appeals.  (Pet'r's Appl. for Leave to Appeal, ECF No. 15-9, PageID.732.)  The

---

[1] A very similar offer was made and rejected at Petitioner's preliminary examination.  (Prelim Exam. Tr., ECF No. 15-2, PageID.144.)

[2] In Petitioner's third appellate issue, he argued that the court erred in scoring 50 points on Offense Variable 7. (Pet'r's Appeal Br., ECF No. 15-8, PageID.633.)  Petitioner has not raised the scoring issue in his habeas petition.

Michigan Supreme Court denied leave by order entered May 2, 2016.  (Mich. Ord., ECF No. 15-9, PageID.730.)

Petitioner then filed his petition in this Court raising the first two issues from his direct appeal.

II.    AEDPA standard

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA).  The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law.  *Bell v. Cone*, 535 U.S. 685, 693-94 (2002).  An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication:  "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."  28 U.S.C. § 2254(d).  This standard is "intentionally difficult to meet."  *Woods v. Donald*, 575 U.S. __, 135 S. Ct. 1372, 1376 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court.  28 U.S.C. § 2254(d).  This Court may consider only the holdings, and not the dicta, of the Supreme Court.  *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001).  In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts.  *Williams*, 529 U.S. at 381-382; *Miller v. Straub*, 299 F.3d 570, 578-79 (6th Cir. 2002).  Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state

court. *Greene v. Fisher*, 565 U.S. 34 (2011).  Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06).  "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 135 S. Ct at 1376 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).  In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998).  A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656.  This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

III.     Ineffective Assistance of Trial Counsel

Petitioner contends that his trial counsel effectively told him that, if Petitioner should lose at trial, the range from which his minimum sentence would be selected would be 108 to 225 months.  Because Petitioner lost at trial and the range from which his minimum sentence was selected was much higher—171 to 356 months—Petitioner contends his counsel rendered ineffective assistance.

In *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel.  To establish a claim of ineffective assistance of counsel, the petitioner must prove:  (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  *Id.* at 689. The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy.  *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack).  The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance."  *Strickland*, 466 U.S. at 690.  Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment.  *Id.* at 691.

Moreover, as the Supreme Court repeatedly has recognized, when a federal court reviews a state court's application of *Strickland* under § 2254(d), the deferential standard of

8

*Strickland* is "doubly" deferential.  *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)); *see also Burt v. Titlow*, 571 U.S. 12, 13 (2013); *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011); *Premo v. Moore*, 562 U.S. 115, 122 (2011).  In those circumstances, the question before the habeas court is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard."  *Id.*; *Jackson v. Houk*, 687 F.3d 723, 740-41 (6th Cir. 2012) (stating that the "Supreme Court has recently again underlined the difficulty of prevailing on a *Strickland* claim in the context of habeas and AEDPA . . . .") (citing *Harrington*, 562 U.S. at 102).

The two-part *Strickland* test applies to challenges to guilty pleas based on ineffective assistance of counsel.  *Hill v. Lockhart*, 474 U.S. 52, 58 (1985).  Regarding the first prong, the court applies the same standard articulated in *Strickland* for determining whether counsel's performance fell below an objective standard of reasonableness.  *Id.*  In analyzing the prejudice prong, the focus is on whether counsel's constitutionally deficient performance affected the outcome of the plea process.  "[I]n order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  *Id*. at 59.

Here, Petitioner does not claim that his counsel's ineffective assistance resulted in accepting a plea offer and foregoing a trial, he claims that counsel's ineffective assistance caused him to reject a plea offer and go to trial when he should have accepted the offer.  In *Lafler v. Cooper*, 566 U.S. 156 (2012), the Supreme Court held that, in a claim alleging that counsel was ineffective in advising a defendant about a plea offer, the *Strickland* standard continues to apply.  As in *Hill v. Lockhart*, 474 U.S. 52, 58 (1985), the prejudice prong of *Strickland* turns on whether, absent counsel's errors, the result of the plea process would have been different.  *See Lafler*, 566

U.S. at 163-67.  In such circumstances, "defendants must demonstrate a reasonable probability they would have accepted the earlier plea offer had they been afforded effective assistance of counsel." *Missouri v. Frye*, 132 S. Ct. 1399, 1409 (2012).

The Michigan Court of Appeals rejected Petitioner's argument:

> "In all criminal prosecutions, the accused shall enjoy the right to . . . the Assistance of Counsel for his defense." US Const, Am VI.  "[T]he right to counsel is the right to effective assistance of counsel." *Strickland v Washington*, 466 US 668, 686; 104 S Ct 2052; 80 L Ed 2d 674 (1984) (quotation marks omitted).  "[T]he proper standard for attorney performance is that of reasonably effective assistance." *Id.* at 687.  Michigan law does not grant a different level of protection with regard to assistance of counsel from that of federal law. *People v Pickens*, 446 Mich 298, 318; 521 NW2d 797 (1994).  A defendant is entitled to effective assistance of counsel both at trial and "in the plea-bargaining process." *People v Douglas*, 496 Mich 557, 591-592; 852 NW2d 587 (2014), citing *Lafler v Cooper*, 566 US ___, ___; 132 S Ct 1376, 1384; 182 L Ed 2d 398 (2012).
>
> In a claim for ineffective assistance of counsel, the defendant has the burden of showing "that counsel made errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment . . . ." *People v LeBlanc*, 465 Mich 575, 578; 640 NW2d 246 (2002) (quotation marks omitted).  Specifically, counsel's performance must fall "below an objective standard of reasonableness." *Strickland*, 466 US at 688.  Second, the defendant must show that "the deficient performance prejudiced the defense." *LeBlanc*, 465 Mich at 578 (quotation marks omitted).  To show such prejudice in the context of the plea-bargaining process,
>
> > a defendant must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed. [*Douglas*, 496 Mich at 592, quoting *Lafler*, 566 US at __; 132 S Ct at 1385.]
>
> However, a defense counsel's performance at plea negotiations does not fall "below an objective standard of reasonableness," *Strickland*, 466 US at 688, merely because counsel incorrectly predicted the defendant's sentence; rather, "[c]ounsel's incorrect prediction concerning defendant's sentence . . . is not enough to support a claim of ineffective assistance of counsel." *In re Oakland Co Prosecutor*, 191 Mich App 113, 124; 447 NW2d 455 (1991).

Based upon *In re Oakland Co Prosecutor*, 191 Mich App at 124, defense counsel's agreement with the prosecution's stated estimate of the minimum sentence guidelines did not amount to a performance that fell "below an objective standard of reasonableness." *Strickland*, 466 US at 688. Furthermore, even if counsel did err in making this estimate, defendant has not shown that this performance "prejudiced the defense," *LeBlanc*, 465 Mich at 578, because he has not shown that "but for the ineffective advice of counsel there is a reasonable probability that . . . [he] would have accepted the plea . . . ." *Douglas*, 496 Mich at 592.

There is no indication on the record that defendant would have accepted the prosecution's plea offer even if he had known exactly what his guidelines range would be after losing at trial. Defendant rejected the plea offer and chose to go to trial immediately after the prosecution made its offer, even though the trial court told defendant that he could have five minutes with his counsel to discuss the matter. Defendant indefatigably maintained his own innocence throughout trial. And, at his sentencing hearing, defendant stated that he hoped that "one day someone will apologize to me . . . for what's been done to me."

Indeed, "the record amply supports the conclusion that, even had the defendant been properly advised of the consequences he faced if convicted at trial, it was not reasonably probable that he would have accepted the prosecution's plea offer" because he maintained his own innocence throughout the proceedings and appeared to never even consider the possibility of accepting a plea. *Douglas*, 496 Mich at 598. Therefore, defendant has not shown that "but for the ineffective advice of counsel there is a reasonable probability that . . . [he] would have accepted the plea . . . ." *Douglas*, 496 Mich at 592. Defendant's claim of ineffective assistance of counsel is without merit.

(Mich. Ct. App. Op., ECF No. 15-8, PageID.615-616.) The state appellate court expressly relied on the clearly established federal law regarding ineffective assistance of counsel in the context of plea advice: *Strickland* and *Lafler*. Moreover, as set forth fully below, the court of appeals' application of that clearly established federal law and its determination of facts was entirely reasonable.

First, as the Michigan Court of Appeals recognized, Petitioner's argument mischaracterizes the record plea discussion.[3] Neither Petitioner's counsel nor the prosecutor ever

---

[3] Petitioner relies only on the plea discussion that appears on the record from the first day of trial. There were earlier plea discussions, *see, e.g.,* (Prelim. Exam. Tr., ECF No. 15-2, PageID.144-145), but Petitioner's claim is grounded exclusively on the discussion that occurred on the record on February 17, 2014.

told Petitioner that he would face a minimum range of 108 to 225 months if he went to trial and lost.  The court made that statement.  (Trial Tr. I, ECF No. 15-3, PageID.169) ("If you go to trial and lose, your guidelines go from 108 to 225 . . . .").  The only statements either Petitioner's counsel or the prosecutor made with respect to the sentence implications of the plea offer were that they estimated the minimum guidelines sentence range to be 108 to 180 months and that the prosecutor would recommend that Petitioner be sentenced in that range.  Thus, to the extent the range that they described as an "estimate" was wrong, Petitioner had the protection that the prosecutor would recommend a sentence within the estimated range.

Moreover, the estimate offered by defense counsel and the prosecutor (108 to 180 months) was fairly accurate.  The change that resulted in the dramatic increase of the guidelines minimum range was the testimony that was elicited during trial regarding the severity of the beating the victim suffered at the hands of Petitioner.  That testimony permitted the trial court to conclude this rape was the most brutal he had ever encountered.  That testimony would not have been in the record if Petitioner had entered the plea.

Moreover, by opting for trial Petitioner was subject to an additional risk: that he would be convicted of two acts of penetration.  Petitioner survived that risk—he was convicted of one penetration and acquitted of the other—but it was a risk that a higher guidelines range would result and a risk that precluded perfectly accurate estimation of Petitioner's sentence in the event of conviction.

The state court of appeals relied on state authority to support the proposition that miscalculation of a possible sentence does not rise to the level of ineffective assistance of counsel, but federal courts have reached the same conclusion.  *United States v. Gordon*, 4 F.3d 1567, 1570-1571 (10th Cir. 1993); *Doganiere v. United States*, 914 F.2d 165 (9th Cir. 1990); *United States v.*

*Arvinitis*, 902 F.2d 489, 494 (7th Cir. 1990); *Mix v. Robinson*, 64 F. App'x 952, 956-57 (6th Cir. 2003). Indeed, incorrectly estimating parole eligibility was the error that the Supreme Court concluded was not sufficiently prejudicial to constitute ineffective assistance of counsel in *Hill*, 474 U.S. at 59-60.

Finally, the state appellate court's determination that Petitioner would not have accepted the plea offer even if Petitioner enjoyed perfect prescience with respect to his sentence following conviction was reasonable on the record. Petitioner's refusal to accept any responsibility for the events of September 29, 2013, is apparent from the record, particularly from his statements at sentencing that he expected an apology for what had happened to him. Indeed, Petitioner rejected the prosecutor's offer, an offer he had heard before, without even consulting with his attorney.

The Michigan Court of Appeals' determination that Petitioner's counsel had not rendered ineffective assistance was not contrary to, or an unreasonable application of clearly established federal law. Moreover, the factual determinations upon which the court relied to reach that conclusion are reasonable on the record. Accordingly, Petitioner is not entitled to habeas relief on his ineffective assistance claim.

IV.    Prosecutorial Vindictiveness and Fraud

Petitioner next attempts to blame the prosecutor for his decision to reject the plea offer. The Michigan Court of Appeals rejected this claim as well:

> Defendant next argues that the prosecution committed misconduct by being presumptively vindictive by arguing at sentencing for an increase in defendant's OV score. We review this unpreserved claim of error for plain error affecting defendant's substantial rights. *People v Carines*, 460 Mich 750, 764; 597 NW2d 130 (1999). "[T]he test for prosecutorial misconduct is whether a defendant was denied a fair and impartial trial." *People v Dobek*, 274 Mich App 58, 63; 732 NW2d 546 (2007). Defendant argues in the alternative that his right to due process was violated when the prosecution did not keep its word to defendant, thereby misleading him into believing his guidelines range would not exceed 225 months,

13

even after trial.  "[F]undamental fairness requires that promises made during plea-bargaining and analogous contexts be respected . . . ."  *Ryan*, 451 Mich at 41 (quotation omitted).  The prosecution violates a defendant's right to due process when it punishes him "for asserting a protected statutory or constitutional right." *People v Ryan*, 451 Mich 30, 35; 545 NW2d 612 (1996).  This is known as prosecutorial vindictiveness.  *Id.* at 36.  However, the fact that the prosecution merely argued at sentencing for a change in the scoring of defendant's OVs does not warrant a presumption of prosecutorial vindictiveness.  *Cf. People v Goeddeke*, 174 Mich App 534, 537; 436 NW2d 407 (1988).

In this case, defendant has failed to indicate what "promise" was made by the prosecution and in what way it failed to keep its word to defendant and has, therefore, abandoned this argument.  *See, e.g., People v Kevorkian*, 248 Mich App 373, 389; 639 NW2d 291 (2001).  The prosecution stated what it had "estimated" defendant's guidelines range to be and indicated that upon a successful plea, it would make a sentencing recommendation that the trial court stay within the estimated guidelines.  While the estimated guidelines were apparently incorrectly estimated, there is no indication that the prosecution gave its word that they were correct.  Moreover, if defendant intends to argue that the prosecution failed to keep a promise to not seek to increase defendant's guidelines range beyond what was estimated at plea negotiations, there is no indication on the record that the prosecution ever made such a promise.  Because the factual predicate for defendant's argument is unsupported, his argument necessarily fails.  *See, People v Geno*, 261 Mich App 624, 629; 683 NW2d 687 (2004).

(Mich. Ct. App. Op., ECF No. 15-8, PageID.616-617.)

The appellate court's statement that Petitioner's "fraud" argument fails because there is no "factual predicate," is a kind way of stating that it is utterly frivolous.  Petitioner's argument consists of the following statements:

Defendant contends that it violates due process of law when a prosecutor tells an accused that he puts 45 additional months at risk if he rejects a plea offer and then, when the accused rejects the offer, argues for a minimum term 156 months beyond what the accused would have received if he had accepted the plea offer. . . . Even if prosecutorial vindictiveness were not shown, it remains a violation of fundamental due process to allow the State to not be held to its word.  There exists a line of cases in which Michigan's appellate courts and the United States Supreme Court, have held the State to its word during plea negotiations.  Said cases involve plea agreements and no plea agreement was reached in this case.  Nonetheless, the fundamental principle should apply—the State should be held to its word. . . . [I]t remains a violation of fundamental due process to allow the State to not be held to its word during a critical stage of any criminal proceeding – plea negotiations.  The prosecution told defendant that he risked 45 additional months and it was in that context that Bolton rejected their offer.

14

(Pet'r's Appeal Br., ECF No. 15-8, PageID.648-650; Pet'r's Appl. for Leave to Appeal, ECF No. 15-9, PageID.750-752.)  The argument is specious.  There is absolutely no record support for Petitioner's claim that the prosecutor told him that rejecting the plea offer put him at risk for an additional 45 months—**none**.  The trial judge certainly invited that inference.  The prosecutor did not.

Plaintiff's claim that these circumstances demonstrate prosecutorial vindictiveness is also frivolous.  The record is entirely devoid of any support for the Petitioner's foundational premise that the prosecutor told Petitioner that he risked only 45 months of additional minimum term imprisonment by foregoing the plea deal.  Absent that representation, the only possible basis for interpreting the prosecutor's guideline arguments as vindictive would be to compare the resulting number to the offered plea.  It is ludicrous to suggest that a prosecutor should be deemed unconstitutionally vindictive because he or she seeks a higher sentence upon conviction after trial than the prosecutor offered in plea negotiations.

In *Bordenkircher v. Hayes*, 434 U.S. 357 (1978), the Supreme Court considered the difficulties of identifying prosecutorial vindictiveness in the context of plea negotiations.  The Court's analysis is instructive here:

> This Court held in *North Carolina v. Pearce*, 395 U.S. 711, 725, that the Due Process Clause of the Fourteenth Amendment "requires that vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives after a new trial."  The same principle was later applied to prohibit a prosecutor from reindicting a convicted misdemeanant on a felony charge after the defendant had invoked an appellate remedy, since in this situation there was also a "realistic likelihood of 'vindictiveness.'"  *Blackledge v. Perry*, 417 U.S., at 27.
>
> In those cases the Court was dealing with the State's unilateral imposition of a penalty upon a defendant who had chosen to exercise a legal right to attack his original conviction—a situation "very different from the give-and-take negotiation common in plea bargaining between the prosecution and defense, which arguably possess relatively equal bargaining power."  *Parker v. North Carolina*, 397 U.S. 790, 809 (opinion of Brennan, J.).  The Court has emphasized that the due process

15

violation in cases such as *Pearce* and *Perry* lay not in the possibility that a defendant might be deterred from the exercise of a legal right, *see Colten v. Kentucky*, 407 U.S. 104; *Chaffin v. Stynchcombe*, 412 U.S. 17, but rather in the danger that the State might be retaliating against the accused for lawfully attacking his conviction.  *See Blackledge v. Perry, supra*, 417 U.S., at 26-28.

To punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort, *see North Carolina v. Pearce, supra*, 395 U.S., at 738 (opinion of Black, J.), and for an agent of the State to pursue a course of action whose objective is to penalize a person's reliance on his legal rights is "patently unconstitutional."  *Chaffin v. Stynchcombe, supra*, 412 U.S., at 32-33, n. 20.  See United States v. Jackson, 390 U.S. 570.  But in the "give-and-take" of plea bargaining, there is no such element of punishment or retaliation so long as the accused is free to accept or reject the prosecution's offer.

Plea bargaining flows from "the mutuality of advantage" to defendants and prosecutors, each with his own reasons for wanting to avoid trial.  *Brady v. United States, supra*, 397 U.S., at 752.  Defendants advised by competent counsel and protected by other procedural safeguards are presumptively capable of intelligent choice in response to prosecutorial persuasion, and unlikely to be driven to false self-condemnation.  397 U.S., at 758.  Indeed, acceptance of the basic legitimacy of plea bargaining necessarily implies rejection of any notion that a guilty plea is involuntary in a constitutional sense simply because it is the end result of the bargaining process.  By hypothesis, the plea may have been induced by promises of a recommendation of a lenient sentence or a reduction of charges, and thus by fear of the possibility of a greater penalty upon conviction after a trial.  *See* ABA Project on Standards for Criminal Justice, Pleas of Guilty § 3.1 (App. Draft 1968); Note, Plea Bargaining and the Transformation of the Criminal Process, 90 Harv.L.Rev. 564 (1977). *Cf. Brady v. United States, supra*, at 751; *North Carolina v. Alford*, 400 U.S. 25.

While confronting a defendant with the risk of more severe punishment clearly may have a "discouraging effect on the defendant's assertion of his trial rights, the imposition of these difficult choices [is] an inevitable"—and permissible— "attribute of any legitimate system which tolerates and encourages the negotiation of pleas."  *Chaffin v. Stynchcombe, supra*, 412 U.S., at 31.  It follows that, by tolerating and encouraging the negotiation of pleas, this Court has necessarily accepted as constitutionally legitimate the simple reality that the prosecutor's interest at the bargaining table is to persuade the defendant to forgo his right to plead not guilty.

*Bordenkircher*, 434 U.S. at 362-64.  For the reasons set forth in *Bordenkircher*, the fact that the prosecutor here sought a greater sentence following conviction than was discussed at the plea negotiation table cannot be interpreted as unconstitutional vindictiveness.

The state appellate court's decision rejecting Petitioner's prosecutorial fraud and vindictiveness claims is neither contrary to, nor an unreasonable application of, clearly established federal law.  Accordingly, Petitioner is not entitled to habeas relief on his prosecutorial misconduct claims.

### Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted.  A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability.  *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001).  Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted.  *Id.* at 467.  Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000).  *Murphy*, 263 F.3d at 467.  Consequently, I have examined each of Petitioner's claims under the *Slack* standard.  Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Id.*  "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims.  *Id.*

I find that reasonable jurists could not conclude that this Court's denial of Petitioner's claims would be debatable or wrong. Therefore, I recommend that the Court deny Petitioner a certificate of appealability.

## Recommended Disposition

For the foregoing reasons, I recommend that the habeas corpus petition be denied. I further recommend that a certificate of appealability be denied.

Dated:    October 17, 2018                      /s/ Ellen S. Carmody
                                                Ellen S. Carmody
                                                United States Magistrate Judge

## NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within 14 days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).